In the Matter of an Application to Enforce an Administrative Subpoena Duces Tecum of the **SECURITIES AND EXCHANGE COMMISSION**, Applicant,

v.

**Dr. Manuel KAPLAN, Respondent.**

No. 75 C 931.

United States District Court,
E. D. New York.

July 2, 1975.

Lawrence B. Seidman and Neil Lang, Washington, D.C., for plaintiff SEC.

Borden & Ball, New York City, for defendant.

By: Joel S. Hanover, New York City, of counsel.

## MEMORANDUM AND ORDER

BRAMWELL, District Judge.

This matter comes before the Court on the application of the Securities and Exchange Commission ("Commission" or "SEC") for an order pursuant to Section 22(b) of the Securities Act of 1933, 15 U.S.C. § 77v(b), and Section 21(c) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(c), directing Dr. Manuel Kaplan to appear and to testify pursuant to a *subpoena duces tecum* and to produce various documents called for pursuant to the said administrative subpoena.

### I

In the instant case, the Commission seeks enforcement by this Court of an administrative *subpoena duces tecum* issued on May 12, 1975, by the staff of the Commission pursuant to Section 20(a) of the Securities Act of 1933, 15 U.S.C. § 77t(a), and § 21(a) of the Securities Exchange Act of 1934, 15 U.S.C.

§ 78u(a). By the aforementioned statutory provisions, the Commission is empowered to conduct investigations into possible violations of the Federal Securities laws.

The facts of this matter as they have been developed before this Court may be briefly summarized as follows: The Commission issued an order dated June 1, 1973, directing a private investigation and designating certain named officers of the Commission to take testimony *In the Matter of I.T.S. Industries, Ltd.,* ("I.T.S."). By this order, the SEC directed that a private investigation be instituted to determine, *inter alia:* whether in the course of the offer and sale of I.T.S. securities certain persons offered and sold unregistered securities, made false and misleading statements of material facts, omitted to state material facts necessary in order to make the statements made not misleading, concerning *inter alia,* the activities, operations and subsidiaries of I.T.S.; and to determine whether certain persons manipulated the price of I.T.S. stock by the creation of an artificial market for such stock which included a false and misleading appearance of trading activity in I.T.S.

securities, in contravention of Sections 5 and 17 of the Securities Act of 1933 (15 U.S.C. § 77e and 77q) and Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and the Rules and Regulations promulgated thereunder.[1]

The SEC's Order provided, consistent with Section 19(b) of the Securities Act, (15 U.S.C. § 77s(b)), and Section 21(b) of the Securities Exchange Act, (15 U.S.C. § 78u(b)), for the designation of several members of the SEC's staff as officers of the Commission empowered, *inter alia,* to subpoena witnesses, to take evidence, and to require the production of books and records deemed relevant and material to the investigation.

On May 12, 1975, pursuant to the Commission's Order, a *subpoena duces tecum* was issued to Dr. Manual Kaplan, directing him to appear and to produce various documents at the offices of the SEC on May 20, 1975, in Washington, D. C. where the investigation was being conducted. Pursuant to mutual agreement, Dr. Kaplan's appearance was adjourned to May 27, 1975. The *subpoena duces tecum* required Dr. Kaplan to pro-

---

1. Section 17(a) of the Securities Act makes it unlawful in the offer or sale of securities to make use of the mails or other jurisdictional facilities to employ any device, scheme or artifice to defraud, to obtain money or property by misrepresentation or to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon purchasers of securities.

Section 10(b) of the Exchange Act makes it unlawful in the purchase or sale of securities to use the mails or other jurisdictional facilities to engage in any manipulative or deceptive device or contrivance in contravention of rules or regulations prescribed by the Commission. The Commission, in Rule 10b–5 implemented Section 10(b) by prescribing conduct in connection with the purchase or sale of securities substantially in the language of Section 17(a) of the Securities Act.

Section 5 of the Securities Act makes it unlawful unless a registration statement is in effect, directly or indirectly;

(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell securities through the use or medium of any prospectus or otherwise; or

(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any security for the purpose of sale or for delivery after sale.

(3) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under Section 8.

duce the following eight categories of documents:

"1. All correspondence, written or otherwise transcribed concerning purchases or sale of stock or any other securities by Mr. Kaplan, for which Arnold Nelson had either recommended the purchase or sale, became aware of the purchase or sale or had any interest (financial, controlling or as an independent contractor) in the issuer of the security.

2. Any investments made in any companies or with any persons by Mr. Kaplan for his own account or for any accounts over which he had or still retains a beneficial interest or discretionary control, which were recommended by Arnold Nelson or for which Mr. Kaplan spoke with Arnold Nelson.

3. All loans made to Arnold Nelson or any persons or companies Arnold Nelson recommended to Mr. Kaplan for a loan from his own account or from any accounts over which Mr. Kaplan had or still retains beneficial or discretionary control.

4. All loans, collateralized or uncollateralized, received by Mr. Kaplan, personally and/or by companies over which Mr. Kaplan had or still retains beneficial or discretionary control from any source during this period.

5. Any bank accounts, domestic or foreign over which Mr. Kaplan had or still retains any beneficial or controlling interest, including but not limited to, checking, savings or special accounts.

6. All cancelled checks, (front and back), deposit slips, savings books, credit memoranda, debit memoranda, relating to the bank accounts in Item 5 above.

7. Any sales of any assets either owned by Mr. Kaplan, or from which he received any proceeds and/or over which he had or still retains any beneficial or controlling interest.

8. Receipt of any monies, stocks, assets, real estate, options or anything of value received from I.T.S., its officers, directors, affiliates, controlled persons, agents, finders and subsidiaries, including but not limited to Arnold Nelson."

Dr. Kaplan, through his attorney, filed a motion to quash the *subpoena duces tecum* dated May 12, 1975, on the grounds that the subpoenaed documents: (1) bear no relevance to the subject of the order of investigation; (2) the request for documents lacks sufficient specificity so as to be unreasonable, capricious and burdensome; and (3) relate to Dr. Kaplan's private affairs.

On June 6, 1975, the Commission by letter to Dr. Kaplan's counsel, advised him that Kaplan's motion to quash the *subpoena duces tecum* had been denied by the Commission. The letter further informed Kaplan's attorney that the Commission had authorized its staff to institute a subpoena enforcement action against Dr. Kaplan.

Upon Dr. Kaplan's refusal to honor the *subpoena duces tecum*, the SEC filed this enforcement proceeding.

## II

The Securities and Exchange Commission is an independent regulatory agency created by the Congress of the United States and charged with the primary responsibility of enforcing the Securities Act of 1933 and the Securities Exchange Act of 1934. Both statutes have as their essential purpose the protection of the investing public. Congress, in enacting the aforementioned laws, invested the Commission with a broad measure of authority so that it might conduct such investigations as it deemed necessary and proper for administrative enforcement of these Acts.[2] As previously noted, these Acts have bestowed upon the SEC, in furtherance of

---

**2.** Section 20(a) of the Securities Act, 15 U.S.C. 77t(a); Section 21(a) of the Securities Exchange Act, 15 U.S.C. 78u(a).

its investigatory authority, the power to subpoena witnesses, to take their testimony, and to require the production of documents which it deems relevant or material to an investigation.[3]

■ Dr. Kaplan contends that the *subpoena duces tecum* issued by the SEC in the instant case constitutes an unreasonable search and seizure in contravention of the rights guaranteed our citizens under the Fourth Amendment. However, it is well-settled that "the Fourth Amendment does not now restrict an administrative subpoena for records or an administrative requirement of reports."[4] In *Oklahoma Press Publishing Co.* v. *Walling*, 327 U.S. 186, 202, 66 S.Ct. 494, 502, 90 L.Ed. 614 (1946), the Supreme Court stated: "The primary source of misconception concerning the Fourth Amendment's function lies perhaps in the identification of cases involving so-called 'figurative' or 'constructive' search with cases of actual search and seizure."[5] The Supreme Court in *Oklahoma Press, supra,* enunciated the comprehensive and broad standard that the requirement of particularity under the Fourth Amendment "comes down to specification of the documents to be produced adequate, but not excessive, for the purposes of the relevant inquiry. Necessarily, as has been said, this cannot be reduced to formula; for relevancy and adequacy or excess in the breadth of the subpoena are matters variable in relation to the nature, purposes and scope of the inquiry."

■ As was said by the Court of Appeals in *Adams* v. *FTC*, 296 F.2d 861 (8th Cir. 1961), *cert. denied* 369 U.S. 864, 82 S.Ct. 1029, 8 L.Ed.2d 83 (1962): "There is general unanimity among the Courts that a subpoena meets the requirements for enforcement if the inquiry is (1) within the authority of the agency; (2) the demand is not too in-

definite, and (3) the information is reasonably relevant."

■ As to the first requirement, Dr. Kaplan concedes that the investigation now being conducted by the SEC is clearly within the authority of that agency. Upon reviewing the demand for documents, this Court finds that it is sufficiently definite to comply with the second of the aforementioned judicial standards.

### III

The final requirement that must be satisfied before the Court may enforce an administrative *subpoena duces tecum* is that of relevancy, that is, whether the information sought by the Commission is relevant to any lawful purpose of the agency. *See: Endicott Johnson Corp.* v. *Perkins,* 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424 (1943). Dr. Kaplan contends that the documents sought by the SEC are irrelevant to the present investigation.

This requirement of relevancy must be considered in the light of the investigative power of the SEC. In *United States* v. *Morton Salt Co.,* 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950), the Supreme Court compared an agency inquiry to that of a grand jury which could investigate solely on the suspicion that a law had been violated without a showing of probable cause:

"Because judicial power is reluctant if not unable to summon evidence until it is shown to be relevant to issues in litigation, it does not follow that an administrative agency charged with seeing that the laws are enforced may not have and exercise powers of original inquiry. It has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury which does not depend on a case or controversy for power to get

---

3. Section 19(b) of the Securities Act, 15 U.S.C. 77s(b) ; Section 21(b) of the Securities Exchange Act, 15 U.S.C. 78u(b).

4. K. Davis, Administrative Law Text (3d ed. 1972), at 55.

5. *Oklahoma Press, supra,* 327 U.S. at 209, 66 S.Ct. at 502.

suspicion that the law is being violated, or even just because it wants assurance that it is not.

When investigative and accusatory duties are delegated by statute to an administrative body, it, too may take steps to inform itself as to whether there is probable violation of the law." 338 U.S. at 642–643, 70 S.Ct. at 364.

■ It is well-established that the Securities and Exchange Commission just as the Federal Trade Commission which was the administrative agency involved in *Morton Salt, supra,* as a fact-finding institution performs a vitally important function similar to that of a grand jury, "the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation." *Woolley* v. *United States,* 97 F.2d 258, 262 (9th Cir. 1938), *certiorari denied,* 305 U.S. 614, 59 S.Ct. 73, 83 L.Ed. 391 (1938); see also *In re Securities and Exchange Commission,* 84 F.2d 316 (2nd Cir. 1936); *reversed and vacated as moot sub nom., Bracken* v. *Securities and Exchange Commission,* 299 U.S. 504, 57 S.Ct. 18, 81 L.Ed. 374 (1936); *Securities and Exchange Commission* v. *First Security Bank,* 447 F.2d 166, 168 (10th Cir. 1971), *certiorari denied sub nom., Nemelka* v. *Securities and Exchange Commission,* 404 U.S. 1038, 92 S.Ct. 710, 30 L.Ed.2d 729 (1972); *Boehm* v. *United States,* 123 F.3d 791, 808 (8th Cir. 1941) *cert. denied,* 315 U.S. 800, 62 S.Ct. 626, 86 L. Ed. 1200 (1942); *Consolidated Mines* v. *Securities and Exchange Commission,* 97 F.2d 704, 708 (9th Cir. 1938).

The Fourth Amendment to the Constitution of the United States provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." As one of the nation's foremost legal scholars has stated:

"Neither the literal language of the Amendment nor the history which led to its adoption supports the idea that the Amendment limits the use of judicially enforceable subpoenas which require testimony or the production of designated books and records."[6]

The Supreme Court of the United States has said of the requirement of "probable cause" as applied to subpoena enforcement actions:

"The requirement of 'probable cause, supported by oath or affirmation', literally applicable in the case of a warrant is satisfied, in that of an order for production, by the court's determination that the investigation is authorized by Congress, is for a purpose Congress can order, and the documents sought are relevant to the inquiry." *Oklahoma Press, supra,* 327 U.S. at 209, 66 S.Ct. at 506.

The Court has on subsequent occasions reaffirmed its commitment to the doctrine articulated in *Oklahoma Press.* See *United States* v. *Morton Salt Co.,* 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950); *F.T.C.* v. *Crafts,* 355 U.S. 9, 78 S.Ct. 33, 2 L.Ed.2d 23 (1957); *United States* v. *Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). In the *Morton Salt* case, the Court went so far as to say that even if the agency request is motivated by "nothing more than official curiosity," the subpoena is enforceable because agencies have a legitimate interest in ensuring that both the law and the public interest are maintained —so long as the agency is acting within its authority and the information sought is relevant to the administrative inquiry. 338 U.S. at 652, 70 S.Ct. at 369.

Thus, as was stated by the Ninth Circuit in *Detweiler Bros.* v. *Walling,* 157 F.2d 841, 843 (9th Cir. 1946), *cert. denied* 330 U.S. 819, 67 S.Ct. 676, 91 L.Ed. 1270 (1947): "The only limitation upon

---

6. K. Davis, Administrative Law Text (3d ed. 1972), at 54–55.

the scope of the Administrator's inquiry is that the records demanded be reasonably relevant to the matter in issue."

■ It is a well-settled and fundamental principle of administrative law, that where an agency seeks the affirmative aid of a United States District Court in enforcing an administrative subpoena, it need only demonstrate that the investigation is for a lawfully authorized purpose within the power of Congress to command and that the documents sought are reasonably relevant to the inquiry. *Securities and Exchange Commission* v. *Brigadoon Scotch Distributing Co.*, 480 F.2d 1047, 1056 (2nd Cir. 1973); *Accord, Oklahoma Press, supra; United States* v. *Morton Salt, supra; United States* v. *Powell, supra; Federal Trade Commission* v. *Browning*, 140 U.S.App.D.C. 292, 435 F.2d 96, 102 (1970).

■ Where a United States District Court is confronted with the necessity of making a determination of relevancy or materiality, it need only find that the documents sought are not plainly immaterial or irrelevant to the investigation. *Endicott Johnson Corp.* v. *Perkins*, 317 U.S. 501, 509, 63 S.Ct. 339, 87 L.Ed. 424 (1943); *Moore Business Forms Inc.* v. *Federal Trade Commission*, 113 U.S. App.D.C. 231, 307 F.2d 188 (1962). Cf. *Civil Aeronautics Board* v. *Hermann*, 353 U.S. 322, 77 S.Ct. 804, 1 L.Ed.2d 852 (1957), where the United States Supreme Court in a per curiam reversal of the Ninth Circuit, reversed the Court of Appeals decision which had overturned the District Court's order enforcing a subpoena. The District Court had held that the administrative *subpoena duces tecum* should be enforced where it found that it was unable to state "that any of the documents or things called for in any of the subpoenas are immaterial or irrelevant to the proceeding" before the administrative agency.

This Court concludes that the documents sought by the administrative *subpoena duces tecum* are relevant to the Commission's investigation.

The parties' affidavits and motion papers demonstrate convincingly the relevancy of the subpoenaed documents. Dr. Kaplan has been a friend of Arnold Nelson's, the alleged mastermind behind I.T.S.' allegedly fraudulent activities for a substantial period of time. This period of friendship includes that period of time in which Mr. Nelson allegedly manipulated the price of I.T.S. stock. During the time period being investigated by the SEC, Dr. Kaplan, purchased approximately 3,200 shares of I.T.S. stock, which did constitute and does constitute, approximately 45% of I.T.S.'s outstanding tradable stock. Dr. Kaplan has denied that he was a Nelson nominee for the purchase of the I.T.S. stock or for any other purpose. Dr. Kaplan has also denied ever having received money from Mr. Nelson to purchase I.T.S. stock or as reimbursement for his purchase of his I.T.S. stock.

The Securities and Exchange Commission has received information indicating that Dr. Kaplan and his mother-in-law, for whom Dr. Kaplan makes investment decisions, both were the recipients of a loan from a second Nelson-controlled company at approximately the same point in time that Dr. Kaplan was purchasing I.T.S. stock.

The Court is of the opinion that the alleged loans by the second Nelson-controlled company to Dr. Kaplan and his mother-in-law make all of the subpoenaed documents relevant to the Commission's investigation. With receipt of such information, the SEC clearly had and has a vital responsibility to pursue legitimate areas of inquiry concerning these and other matters touching upon Dr. Kaplan's financial transactions with and involving Mr. Nelson.

As the United States Court of Appeals for the Second Circuit has stated, in discussing the role of the grand jury, to which the Commission's investigation has been correctly compared, its ". . . investigation is not fully carried out until every available clue has been run down and all witnesses exam-

ined in every proper way to find out if a crime has been committed." *United States* v. *Stone*, 429 F.2d 138, 140 (2nd Cir. 1970).

## IV

 Finally, as enunciated in *Securities and Exchange Commission* v. *Brigadoon Scotch Distributing Co.*, *supra*, once the Commission has fulfilled the requirements of demonstrating that its investigation is for a lawfully authorized purpose within the power of the Congress to command and that the documents which it seeks are relevant to that purpose it becomes the affirmative burden of the respondent to show that the subpoena is unreasonable and that burden remains with the respondent. *See: United States* v. *Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964); *Donaldson* v. *United States*, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). This burden Dr. Kaplan has failed to meet. Dr. Kaplan has not indicated how production of the documents and records required by the *subpoena duces tecum* constitute an unreasonable demand, that is, that compliance with an agency subpoena would be *unnecessarily* burdensome.

Thus, as the Court of Appeals indicated in *Newmark & Co.* v. *Wirtz*, 330 F.2d 576, 578 (2d Cir. 1964), the mere suggestion by respondents of possible damage to their business activities is not a sufficient basis to block an authorized inquiry into relevant matters. *See also: Securities and Exchange Commission* v. *Brigadoon Scotch Distributing Company*, 480 F.2d 1047, 1056 (1973). Dr. Kaplan alleges that compliance with the subject subpoena would be quite burdensome in that in order to comply with its teams, it would require that he engage substantial clerical and accounting help as well as to devote a substantial portion of his time and energies to this matter. Given the standard set forth by the Second Circuit in *Newmark*, this Court finds that such allegations are not a sufficient basis to block the SEC's authorized inquiry into relevant matters. *See: F. T. C.* v. *Standard America, Inc.*,

306 F.2d 231 (3 Cir. 1962). As was said by the Supreme Court in *Morton Salt*, *supra*, 338 U.S. at page 654, 70 S.Ct. at page 369 the respondent should have "made a record that would convince [the District Court] of the measure of [its] grievance rather than ask [the District Court] to assume it."

Accordingly, Dr. Manuel Kaplan is directed to appear before the Securities and Exchange Commission at a time and place designated by the Commission, to give testimony and to produce the documents required by the *subpoena duces tecum* lawfully served upon him.

It is so ordered.