USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-2262 CAROL SAWYER PARKS, Plaintiff - Appellant, v. FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR OLYMPIC INTERNATIONAL BANK AND TRUST COMPANY, Defendant - Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Edward F. Harrington, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Bownes, Senior Circuit Judge, ____________________ and Selya, Circuit Judge. _____________ _____________________ David G. Hanrahan, with whom Ross D. Ginsberg and Gilman, __________________ ________________ _______ McLaughlin & Hanrahan, were on brief for appellant. _____________________ Jaclyn C. Taner, Counsel, with whom Ann S. Duross, Assistant _______________ _____________ General Counsel, Colleen B. Bombardier, Senior Counsel, John P. _____________________ _______ Parker, Senior Attorney, and Juanita L. Dean, Counsel, were on ______ ________________ brief for appellee, Federal Deposit Insurance Corporation. ____________________ September 13, 1995 ____________________ TORRUELLA, Chief Judge. Plaintiff-appellant Carol TORRUELLA, Chief Judge. ____________ Sawyer Parks filed suit in the United States District Court for Massachusetts to enjoin defendant-appellee Federal Deposit Insurance Company ("FDIC") from enforcing a subpoena duces tecum _____ _____ seeking Parks' personal financial papers and records. The district court granted the FDIC's motion to dismiss Parks' complaint, and for summary enforcement of the subpoena. Parks' appeal of that decision presents the following important question: Does the Fourth Amendment's proscription against unreasonable searches and seizures require the FDIC to articulate some quantum of individualized suspicion of wrongdoing before subpoenaing a citizen's private financial papers? Relying on the Supreme Court's long-held distinction between the Fourth Amendment rights accorded private -- as opposed to corporate -- papers, we answer in the affirmative. Because the district court did not review the subpoena under the standard we announce today, we reverse and remand for further proceedings consistent with this opinion. BACKGROUND BACKGROUND __________ The FDIC insures deposits in financial institutions and is authorized by statute to act as receiver for insured institutions that fail and are closed by their chartering authority. 12 U.S.C. 1811, 1821(c)(2) & (3). When the FDIC is appointed receiver for a failed institution, it succeeds by law to "all rights, titles, powers, and privileges" of the institution's officers and directors with respect to the assets -2- of the institution. Id. at 1821(d)(2)(A). As a receiver, the __ FDIC is authorized to collect all obligations and moneys owed to failed institutions for the benefit of the institution's creditors and shareholders. Id. 1821(d)(2)(B). To facilitate __ this function, Congress has authorized the FDIC to issue subpoenas and subpoenas duces tecum "for purposes of carrying out _____ _____ any power, authority, or duty with respect to an insured depository institution (including determining any claim against the institution and determining and realizing upon any assets of any person in the course of collecting money due the institution). . . ." Id. 1818(n), 1821(d)(2)(I)(i). The FDIC __ is empowered to avoid fraudulent transfers, assert claims against directors and officers, and seek court orders attaching assets. Id. 1821(d)(17), 1821(k), 1821(d)(18). In addition, Congress __ directs the FDIC, generally, to maximize the return for the sale of assets, and to minimize losses. Id. 1821(d)(13)(E). __ Ms. Parks was a director of Olympic International Bank and Trust Company ("Olympic") from May 1987 through July 1990. On June 26, 1992, Olympic was declared insolvent and the FDIC was appointed its receiver. On June 28, 1994, the FDIC issued an Order of Investigation to determine whether (1) former directors and officers may be liable as a result of any actions or failures to act which may have affected Olympic; (2) pursuit of litigation would be cost effective, considering the extent of the potential defendants' ability to pay a judgment; (3) the FDIC should seek to avoid a transfer of assets; and (4) the FDIC should seek an -3- attachment of assets. On July 28, 1994, the FDIC issued a subpoena duces _____ tecum to Ms. Parks requesting the following information:  _____ 1. Your current financial statement and all financial statements listing your assets and liabilities, (alone or with others). 2. All financial statements of your spouse. 3. All credit applications submitted by you or your spouse, alone or with others, to any depository institution or any other person or entity. 4. All records prepared, generated, or received on or after August 1, 1993 through August 1, 1994, referring or relating to the source and amount of any income received by you or on your behalf, including but not limited to all wages, salary, commissions, bonuses, interest and dividend payments, and any other form of income received by you. 5. All federal, state and local tax returns filed by you either individually or jointly with another, along with all forms and schedules filed with such returns from January 1, 1989 through April 15, 1994. 6. All records prepared, generated, or received from August 1, 1993 through August 1, 1994 which refer or relate to stocks, bonds, securities or other investments currently owned by individually or with others, including but not limited to any statements showing their value. 7. All documents that reflect, refer or relate to any financial, real or personal property transactions, including cash, in which you, or anyone acting on your behalf, or under your control or influence, have been involved, (except as the attorney, employee or agent of another party on transactions in which you had no personal interest), having a value of $5,000 or more, per person or organization per year, including, but not limited to, the following: -4- a. all real and personal property purchases, sales or transfers, with or without consideration; b. all trust participants; c. mortgages, trusts or other liens on security interests obtained or supplied to any third party; d. lawsuits; and e. repossessions and returns. 8. All documents referring or relating to any transfer of assets exceeding $5,000 to any entity, account, place or person located outside the United States of America. 9. All records referring or relating to any interest you hold in any real personal or other type of property exceeding $5,000 in value not described above. 10. All documents referring or relating to any transfer or assets exceeding $5,000 to any entity, account, place or person located outside the United States of America. 11. All records referring or relating to any interest you hold in any real personal or other type of property exceeding $5,000 in value not described above. Ms. Parks refused to produce the information. Instead, she filed a complaint for declaratory and injunctive relief in the United States District Court for Massachusetts arguing, among other things, that compelled production of the documents would violate her rights under the Fourth Amendment. The FDIC filed a motion to dismiss the complaint, and for summary enforcement of the subpoena. On the same day that the FDIC filed its motion, the district court, without the benefit of a hearing, or even a response from Parks, granted the FDIC's motion to dismiss and for summary enforcement of the subpoena. We granted Parks' subsequent motion to stay enforcement of the subpoena pending -5- appeal. -6- DISCUSSION DISCUSSION __________ Ms. Parks argues that the FDIC subpoena constitutes an "unreasonable search" of her private financial papers in violation of her rights under the Fourth Amendment. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." The Supreme Court has described the subpoena as a "constructive" search, Oklahoma Press Pub. Co. _______________________ v. Walling, 327 U.S. 186 (1945), which is therefore subject to _______ Fourth Amendment limitations. Donovan v. Lone Steer, Inc., 464 _______ _________________ U.S. 408, 415 (1984); United States v. Morton Salt Co., 338 U.S. _____________ _______________ 632, 651 (1950) ("[T]he 'right to be let alone -- the most comprehensive of rights and the right most valued by civilized men,' is not confined literally to searches and seizures as such, but extends as well to the orderly taking under compulsion of process . . . .") (citations omitted). It is beyond dispute that Ms. Parks' has a "legitimate expectation of privacy" in her privately held financial papers and records, and thus that her Fourth Amendment rights are implicated by the FDIC's subpoena. See United States v. Jacobsen, 466 U.S. 109, 113 (1984); Nixon v. ___ _____________ ________ _____ Admin. of General Serv., 433 U.S. 425, 457-58 (1976) (President ________________________ has legitimate expectation of privacy in his private papers). Cf. United States v. Miller, 425 U.S. 435, 440-44 (1975) (no __ _____________ ______ Fourth Amendment interest of depositor implicated because financial papers ceased to be "private papers" when transferred -7- to bank).1 The question then becomes whether the subpoena issued by the FDIC was "reasonable" within the meaning of the Fourth Amendment. Florida v. Jimeno, 500 U.S. 248, 250 (1991) ("The _______ ______ touchstone of the Fourth Amendment is reasonableness."); United ______ States v. Calandra, 414 U.S. 338, 354 (1974) ("The purpose of the ______ ________ Fourth Amendment is to prevent unreasonable governmental intrusions into the privacy of one's person, house, papers, or effects."). Our review of the relevant case law persuades us that, although the FDIC met the lenient standard of reasonableness for administrative subpoenas of corporate records, _________ it failed to meet the stricter standard of reasonableness that applies to administrative subpoenas of personal papers and ________ records. I. I. The FDIC asserts that the only constraints on its power to subpoena an individual's private financial papers are that the investigation be within its authority, the subpoena be  ____________________ 1 The Supreme Court has recognized that: Of all the rights of the citizen, few are of greater importance or more essential to his peace and happiness than the right of personal security, and that involves, not merely protection of his person from assault, but exemption of his private _______________________________ affairs, books, and papers from the _________________________________________ inspection and scrutiny of others. ________________________________________ Without the enjoyment of this right, all others would lose half their value. Interstate Commerce Comm'n v. Brimson, 154 U.S. 447, 479 (1894) __________________________ _______ (citation and internal quotation marks omitted; emphasis added). -8- sufficiently definite, and the information reasonably relevant.2 The FDIC relies on our decision in United States v. Comley, 890 _____________ ______ F.2d 539, 541 (1st Cir. 1989), where we stated that: In general, an agency subpoena is enforceable if it is for a proper purpose authorized by Congress, the information sought is relevant to that purpose and adequately described, and statutory procedures are followed in the subpoena's issuance. . . . "As long as the investigation is within the agency's authority, the subpoena is not too indefinite, and the information sought is reasonably relevant, the district court must enforce an administrative subpoena." Id. at 541 (internal citations omitted) (quoting EEOC v. Tempel __ ____ ______ Steel Co., 814 F.2d 482, 485 (7th Cir. 1987)). Comley, however, _________ ______ concerned corporate papers, not private papers. As explained below, the Supreme Court has long recognized a distinction between the two. Comley relied on United States v. Powell, 379 U.S. 48, ______ _____________ ______ 57-58 (1964), which concerned a challenge by a corporate taxpayer to a request by the IRS to produce corporate tax records. In _________ rejecting the taxpayer's contention that the IRS must establish probable cause of wrongdoing as a prerequisite to judicial enforcement of the request, the Powell Court relied on the two ______ cases principally relied on here by the FDIC -- Oklahoma Press, ______________ 327 U.S. 186 and Morton Salt 338 U.S. 632. Both cases involved ___________ corporate records, a fact the Supreme Court evidently considered  ____________________ 2 As noted previously, the FDIC is empowered to avoid fraudulent transfers, assert claims against directors and officers, and seek court orders attaching assets. Id. 1821(d)(17), 1821(k), __ 1821(d)(18). -9- of paramount importance in analyzing the Fourth Amendment issue. In Oklahoma Press, several newspaper publishing ________________ corporations challenged the right of a government agency to judicial enforcement of subpoenas duces tecum for corporate _____ _____ records absent a showing of wrongdoing. In rejecting a probable cause standard for issuance of an administrative subpoena, the Court explained that because corporations are created by the state, they "are not entitled to all of the constitutional protections which private individuals have." Oklahoma Press, 327 ______________ U.S. at 204-05. The court made it quite plain that its holding, and the standard it established for enforcement of an administrative subpoena duces tecum under the Fourth Amendment, _____ _____ was predicated on the fact that corporate, as opposed to private papers were at issue. Historically private corporations have been subject to broad visitorial power, both in England and in this country. And it long has been established that Congress may exercise wide investigative power over them, analogous to the visitorial power of the incorporating state, when their activities take place within or affect interstate commerce. Correspondingly it has been settled that _________________________________________ corporations are not entitled to all of _________________________________________ the constitutional protections which _________________________________________ private individuals have in these _________________________________________ matters. _______ Id. at 204-05 (footnotes omitted). __ The respondent corporations in Morton Salt challenged ___________ the Federal Trade Commission's ("FTC's") power to require them to file reports indicating compliance with a federal court of appeal's decree enforcing an FTC cease and desist order. In -10- language relied on heavily by the FDIC in this case, the Court compared the subpoena power of an administrative agency "to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." Id. at 642-43. The comparison, __ however, was made in reference to the corporate respondent's claim that the agency had invaded the court of appeals jurisdiction, it had nothing to do with respondent's Fourth Amendment claim.3 The Court made this clear: "Whether the Commission has invaded any private right of respondents' we consider under later rubrics. Our only concern under the present heading is whether the Commission's order infringes prerogatives of the court." Id. at 643. __ The Morton Salt Court did hold -- in the section of the ___________ opinion which actually concerned the Fourth Amendment -- that the FTC need not establish wrongdoing by the respondent corporations in order to subpoena their financial documents. The Court based this decision on the fact that corporations do not merit the same degree of Forth Amendment protections as private individuals. While they may and should have protection from unlawful demands made in the name of public investigation, corporations can claim no equality with _________________________________________ individuals in the enjoyment of a right _________________________________________ to privacy. They are endowed with public __________ attributes. They have a collective impact upon society, from which they  ____________________ 3 The above quoted language came under a section of the opinion entitled "Invasion of Court of Appeals Jurisdiction". -11- derive the privilege of acting as artificial entities. Id. at 651-52 (emphasis added; internal citations omitted). __ We think the clear import of Oklahoma Press and Morton ______________ ______ Salt is that the standard for judicial enforcement of ____ administrative subpoenas of a private citizen's private papers is stricter than that for corporate papers. Our research indicates that the Supreme Court has never extended the lenient Morton Salt ___________ standard for administrative subpoenas of corporate records to private records. Rather, the Court has always couched the standard in the context of the corporate status of the subpoena target.4 The FDIC argues that we should nevertheless apply the lenient Morton Salt standard governing administrative subpoenas ___________ of corporate papers to subpoenas for private papers because three federal appeals courts have recently done so. We find the cases cited by the FDIC unpersuasive. In Resolution Trust Corp. v. Walde, 18 F.3d 943 (D.C. ______________________ _____ Cir. 1994), the court implicitly held that the RTC is not required to articulate an individualized suspicion of wrongdoing when it subpoenas private records for determining liability,  ____________________ 4 For example, in Donovan, supra, the Court stated that, "when _______ _____ an administrative agency subpoenas corporate books or records, _________ the Fourth Amendment requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will no be unreasonably burdensome." 464 U.S. at 415 (quoting See v. City of Seattle, 387 U.S. 541, 544 (1967) ___ _______________ and citing Morton Salt, 338 U.S. at 652-53). ______ ___________ -12- avoiding asset transfers, and freezing assets. Id. at 946.5 __ The court's discussion of this issue begins and ends with its quoting of the Morton Salt standard for judicial enforcement of ___________ an administrative subpoena. The court completely ignores Morton ______ Salt's sharp distinction between corporate and private papers. ____ See id. at 946. Walde, then, is unpersuasive to the extent that ___ __ _____ it ignores the Supreme Court's explicit recognition in both Oklahoma Press and Morton Salt that private financial papers _______________ ____________ deserve stricter Fourth Amendment protection than corporate papers. In In re McVane, 44 F.3d 1127 (2d Cir. 1995), the _____________ Second Circuit concluded that "although the Morton Salt case ___________ recognized that individuals enjoy greater rights of privacy than do corporations, courts have nevertheless applied the lenient Morton Salt test to administrative subpoenas seeking personal ____________ records." Id. at 1137. The court cited two cases as examples of __ this seemingly anomalous practice -- Walde and the Supreme _____ Court's decision in United States v. Stuart, 489 U.S. 353 (1989). _____________ ______  ____________________ 5 As noted previously, these three areas of investigation are authorized by statute. The court held, however, that the RTC's fourth asserted area of investigation -- determining the cost- effectiveness of a potential lawsuit -- is not authorized by its statutory directive to maximize the return for the sale of assets, and to minimize losses. Id. at 949; 12 U.S.C.  __ 1821(d)(13)(E). The court therefore held that when issuing a subpoena for this purpose, the RTC must demonstrate at least an articulable suspicion of wrongdoing. Id. See also In Re McVane, __ ________ ____________ 44 F.3d 1127, 1139-40 (2d Cir. 1995) (holding that, absent at least an articulable suspicion that a former director is liable to the failed bank, determining the cost-effectiveness of litigation is not a proper purpose for the issuance of a subpoena). -13- As noted, Walde sheds little light on this subject because it _____ ignores the Morton Salt Court's distinction between corporate ____________ documents and personal records. At least, however, Walde is on _____ point; Stuart is not. ______ Stuart concerned a treaty between the United States and ______ Canada that obliged the United States to obtain and convey information to Canadian authorities to assist them in determining a Canadian taxpayer's income tax liability. The respondents were Canadian citizens and residents who maintained bank accounts in the United States. They challenged the authority of the IRS to issue an administrative summons to their bank for their private financial documents, pursuant to a request by Canadian authorities, without first determining that the Canadian tax investigation had reached a stage analogous to a domestic tax investigation's referral to the Justice Department for criminal prosecution. 489 U.S. at 357. The Fourth Amendment was never raised as a defense by the respondent taxpayers; indeed, the Fourth Amendment is never even mentioned in the Stuart opinion. ______ The reason is manifest. Because the documents were located at the bank, and had thus been exposed to third parties, the respondents had no reasonable expectation of privacy, and, consequently, no Fourth Amendment interest in the documents. See ___ Securities and Exchange Comm'n v. O'Brien, Inc., 467 U.S. 735, _______________________________ _____________ 743 (1984) (Fourth Amendment does not protect information communicated to a third party); United States v. Payner, 447 U.S. _____________ ______ 727, 731-32 (1979) (no legitimate expectation of privacy in -14- documents voluntarily turned over to bank); United States v. _____________ Miller, 425 U.S. 435, 441-43 (1975) (depositor has no expectation ______ of privacy and thus no "protectable Fourth Amendment interest" in financial records retained by bank). Stuart thus provides no ______ support for the proposition asserted here by the FDIC. The FDIC also directs us to the Third Circuit's recent decision in Federal Deposit Insurance Corp. v. Wentz, 1995 WL _________________________________ _____ 329921 (3d Cir. 1995). Wentz is the only administrative subpoena _____ case we have found that contains more than a passing reference to the distinction between corporate and private papers. Contrary to the FDIC's assertions, however, we think it provides as much support for Parks' position as that of the FDIC. In Wentz, the court upheld an FDIC subpoena of the _____ personal financial documents of former officers and directors of a failed bank. The court began by citing the lenient Morton Salt ___________ test for enforcement of an administrative subpoena. The court recognized, however, that "[w]hen personal documents of individuals, as contrasted with business records of corporations, are the subject of the subpoena, privacy concerns must be considered." Id. at *2 (citing Whalen v. Roe, 429 U.S. 589, 599 __ ______ ___ (1977)). The court then balanced the governmental need for the information against the respondents' privacy interest in their personal financial documents, and concluded that the public interest in "safeguarding the FDIC's legislative mandate outweighs the minimal intrusion into the privacy that surrounds the directors' personal financial records . . . ." Id. at *4. __ -15- Wentz recognized that subpoenas for privately held _____ financial documents implicate privacy concerns and should therefore be evaluated by a stricter standard than corporate documents. As explained below, we agree with Wentz that the _____ proper inquiry requires a balancing between the governmental need to search and the privacy interests of the subpoena target.6  Where we part company with Wentz is solely in the mechanics of _____ the balancing itself. We address this issue below.7 II. II. The FDIC asserts the power to rummage through the financial papers of private citizens based on nothing more than the hope that illegal conduct might be revealed. We do not think that Ms. Parks waived her Fourth Amendment interest in her private papers by serving on the board of directors of a federally regulated bank. See In re Sealed Case, 42 F.3d at ___ __________________ 1418. Moreover, we think it inconceivable that the Framers of the Constitution, who knew so well and cared so deeply about arbitrary governmental interference in private citizen's affairs, would countenance such unbridled power in the hands of an administrative agency. See Camara v. Municipal Court, 387 U.S. ___ ______ ________________ 523, 528 (1967) (the "basic purpose" of the Fourth Amendment "is  ____________________ 6 Interestingly, although Wentz did not explicitly state that _____ the respondent's privacy interest derived from the Fourth Amendment, the court posited what is essentially a Fourth Amendment reasonableness test. 7 Other federal court of appeals cases cited by the FDIC are inapposite because, like Comley, they concern corporate records. ______ See, e.g., Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. RTC, ___ ____ ______________________________________________ ___ 5 F.3d 1508 (D.C. Cir. 1993). -16- to safeguard the privacy and security of individuals against arbitrary invasions by government officials"). As Justice Holmes observed: Anyone who respects the spirit as well as the letter of the Fourth Amendment would be loath to believe that Congress intended to authorize one of its subordinate agencies to sweep all our traditions into the fire and to direct fishing expeditions into private papers on the possibility that they may disclose evidence of crime. We do not discuss the question whether it could do so if it tried, as nothing short of the most explicit language would induce us to attribute to Congress that intent. Federal Trade Comm'n v. American Tobacco Co., 264 U.S. 298, 305- _____________________ ____________________ 06 (1924) (citation omitted).8 The question that remains is what quantum of suspicion should be required for judicial enforcement of an FDIC subpoena of an individual's private financial papers. Since reasonableness is the touchstone, our inquiry requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." United States v. Place, 462 U.S. 696, 703 (1983); Camara, 387 _____________ _____ ______ U.S. at 534-35 (1967). In this case there are compelling  ____________________ 8 The dissent relies heavily upon the fact that an administrative subpoena, unlike a search in the criminal context, is not self-executing. Whatever relevance this distinction may have in the ordinary case, it surely has none in this one. As noted previously, the district court granted the FDIC's motion to dismiss, and for summary enforcement of the subpoena on the same day the motion was filed. Ms. Parks thus never had an opportunity to be heard on the motion, or even to respond to it. -17- interests on both sides. There is a strong public interest in promptly resolving the affairs of insolvent banks on behalf of their creditors and depositors. Moreover, the FDIC's legislative mandate is clear with respect to avoiding fraudulent transfers, attaching assets, and generally asserting claims against directors and officers of failed financial institutions. 12 U.S.C. 1821(d)(17), 1821(d)(18), 1821(k). On the other hand, private citizens have a significant expectation of privacy in their personally held financial papers. Indeed, "papers" are specifically listed in the text of the Fourth Amendment. We think the significant public interest in resolving the affairs of failed institutions, as reflected by the FDIC's legislative mandate, deserves considerable weight. Consequently, we conclude that the "balancing of governmental and private interests suggests that the public interest is best served by a Fourth Amendment standard of reasonableness that stops short of probable cause." New Jersey v. T.L.O., 325 U.S. 334, 341 (1985). __________ ______ In such cases, the Supreme Court has often utilized a reasonableness standard which requires the government to articulate a reasonable suspicion of wrongdoing by the target of the search. See, e.g., id. at 342; Delaware v. Prouse, 440 U.S. ___ ____ __ ________ ______ 873, 881 (1979); United States v. Mart nez-Fuerte, 428 U.S. 648, _____________ _______________ 654-55 (1976); United States v. Brignoni-Ponce, 422 U.S. 873, 881 _____________ ______________ (1975); Terry v. Ohio, 392 U.S. 1 (1968). We think this standard _____ ____ strikes the appropriate balance between protecting private citizens' private papers and enabling the FDIC to fulfill its -18- statutory mandate.9 The district court did not consider whether the FDIC had articulated reasonable suspicion of wrongdoing by Ms. Parks. Moreover, we think that the affidavit supplied by one of the FDIC's investigators, which was on record at the district court, does not provide such an articulable suspicion of wrongdoing. The affidavit simply states that the bank lost over eight million dollars as a result of several insider loans which were approved or ratified by the directors of Olympic, including Parks, after the bank had received regulatory warnings regarding its loan practices. The investigator concludes that the nature and extent of the losses suggests that the directors "were grossly negligent and violated their fiduciary duty of loyalty to Olympic in making the insider loans." The affidavit articulates a generalized suspicion of wrongdoing by the bank directors, but fails to articulate the required individualized suspicion of wrongdoing by the target of the subpoena, Ms. Parks. Cf. Ybarra v. Illinois, 444 U.S. 85, __ ______ ________  ____________________ 9 In conducting this balancing, the Wentz court, supra, _____ _____ apparently concluded that the FDIC need not articulate any quantum of suspicion because the targets of the subpoena had not shown that the information contained in their personal financial records was of such a sensitive nature that they were "likely to suffer any adverse effects from disclosure." Wentz, 1995 WL _____ 329921, at *4 (quoting United States v. Westinghouse Elec. Corp., _____________ ________________________ 638 F.2d 570, 578 (3d cir. 1980)). But once it is conceded, as it must be, that a citizen has a legitimate expectation of privacy in privately held financial papers, see supra, the ___ _____ question is not whether the individual will suffer adverse effects from disclosure, but whether the government has shown ______________ adequate justification for searching the documents. This, one would think, is the whole point of the Fourth Amendment. -19- 93, 97 (1980); United States v. Lott, 870 F.2d 778, 783 (1st Cir. _____________ ____ 1989). See also United States v. Jaramillo, 25 F.3d 1146, 1150 ________ _____________ _________ (2d Cir. 1994) ("any invasion of a person's Fourth Amendment interests must be justified at least by 'specific and articulable facts' directed to the person whose interests are to be invaded"). Similarly, in McVane, the court rejected an FDIC ______ subpoena of certain former directors' familial records because the FDIC affidavit stated only that another director has transferred assets to family members. The court reasoned that "the FDIC has articulated no grounds for suspecting that any of these Directors (as opposed to the unnamed 'other former _____ director') has transferred assets to family members." McVane, 44 ______ F.3d at 1139. The FDIC has not shown that Parks received an insider loan or otherwise benefited from such a loan to another director. Cf. Resolution Trust Corp. v. Adams, 869 F. Supp. 1, 3 n.4 ___ _______________________ _____ (D.D.C. 1994) (respondent directors paid themselves approximately $8 million in preferred dividends of the failed institution). Nor has the FDIC shown "a suspicious asset transfer or a questionable payment by the target, or deposition testimony of other former officers and directors" casting suspicion upon Parks. Walde, 18 F.3d at 949. Cf. In Re Sealed Case, 42 F.3d at _____ __ _________________ 1417 (finding articulable suspicion due to respondent directors involvement in unusual transfers "between two companies that they owned within a bank that they controlled"). Under a reasonable suspicion standard, if the FDIC has no "specific basis . . . upon -20- which to suspect that the target engaged in wrongdoing, then the __________ subpoena cannot be enforced." Walde, 18 F.3d at 949 (emphasis _____ added). Based on the current record, we conclude that the FDIC has failed to articulate specific facts for suspecting that Ms. Parks has engaged in any wrongdoing with respect to her role as a director of Olympic. Until the FDIC can do so, the Fourth Amendment dictates that her privately held financial papers are just that -- private.10 CONCLUSION CONCLUSION The Fourth Amendment requires that the FDIC articulate an individualized suspicion of wrongdoing by the petitioner as a prerequisite to judicial enforcement of a subpoena duces tecum _____ _____ seeking her privately held financial documents. The judgment of the district court is therefore reversed, and the case remanded ________ ________ for further proceedings to determine whether the FDIC can in fact meet this standard. -- Dissenting Opinion follows --  ____________________ 10 Of course, petitioner cannot assert any privacy claim with respect to any documents that she has already disclosed to the public. See Nixon, 425 U.S. at 459 (citing United States v. ___ _____ ______________ Dionisio, 410 U.S. 1, 14 (1973)). ________ -21- SELYA, Circuit Judge (dissenting). I believe that this SELYA, Circuit Judge (dissenting). _____________ case is less exotic than the majority suggests. The FDIC, acting within its statutory authority, 12 U.S.C. 1821(d), issued an order of investigation to determine, inter alia, whether former _____ ____ directors and officers of a failed bank, Olympic International Bank and Trust Co., may be liable as a result of any acts or omissions affecting Olympic. The agency then directed an administrative subpoena to appellant Parks (a former Olympic director). The record makes manifest that the agency issued this subpoena in good faith and for a statutorily permitted purpose. The majority concedes, ante at 7, that the subpoena "met the ____ lenient standard of reasonableness" imposed on administrative subpoenas under longstanding case law. In my view, these validations are sufficient. Precedent does not support the additional limitation that the majority today unveils, the Constitution does not require that limitation, and policy considerations counsel against its imposition. A A In the first place, the majority's position is completely unprecedented. An administrative subpoena is not self-executing and is, therefore, not itself a search; it is a direction to produce documents and/or testimony, subject to judicial review should the subpoenaed party balk. See Oklahoma ___ ________ Press Pub. Co. v. Walling, 327 U.S. 186, 195, 202 (1945); In re ______________ _______ _____ Grand Jury Subpoena Served Upon Simon Horowitz, 482 F.2d 72, 75- _______________________________________________ 79 (2d Cir.) (Friendly, J.), cert. denied, 414 U.S. 867 (1973). _____ ______ -22- In other words, a person upon whom an administrative subpoena is served unlike a person subjected to, say, an actual search or a Terry stop has an opportunity to quash the subpoena before _____ producing the information. At that stage, of course, the Fourth Amendment can be interposed as a bar to enforcement of the subpoena. See Donovan ___ _______ v. Lone Steer, Inc., 464 U.S. 408, 415 (1984). Until today, _________________ however, no modern federal appellate court has ever held that an administrative subpoena which satisfies the traditional four-part test (that is, a subpoena issued after all appropriate administrative steps have been taken, for a proper purpose, seeking information that is relevant to that purpose and which is not within the agency's possession) is unenforceable or subject to curtailment solely on the ground that it implicates "personal financial records" as opposed to "corporate records." The decisions with which I am familiar run uniformly to the contrary. See, e.g., RTC v. Frates, ___ F.3d ___, ___ (D.C. Cir. 1995) ___ ____ ___ ______ [1995 WL 471777 at *3] (rejecting articulable suspicion standard for enforcing RTC subpoena of personal financial records); In re ______ McVane, 44 F.3d 1127, 1136 (2d Cir. 1995) (similar); RTC v. ______ ___ Walde, 18 F.3d 943, 946-47 (D.C. Cir. 1994) (similar); SEC v. _____ ___ Knopfler, 658 F.2d 25, 26 (2d Cir. 1981) (enforcing, on standard ________ showing for administrative subpoenas, SEC subpoena issued to individuals for personal financial records relating to potential insider trading), cert. denied, 455 U.S. 908 (1982). _____ ______ The majority, without citing a single case on point, -23- abruptly departs from this established precedent. The upshot is to create a singular benchmark against which certain administrative subpoenas henceforth will have to be evaluated in the First Circuit and only in the First Circuit. I am unwilling to venture along this rocky coast simply to answer a siren's call. B B My principal substantive objection to the majority's approach is to the notion that the Fourth Amendment distinguishes between "personal financial records" and "corporate records" with regard to administrative subpoenas. To be sure, language faithfully quoted by the majority suggests that, in an earlier, more genteel era, the Supreme Court took care to confine its rulings to the exigencies of the particular administrative subpoena cases then before it but those cases, whether read individually or in the ensemble, do not constitute anything approximating a conclusive holding that the privacy interest in personal financial records must always be accorded greater respect than a corporation's privacy interest in its records. Indeed, I read the language on which the majority relies as denoting nothing more than that the Court desired at the time to keep the question open. And more recent developments in the law have blurred whatever distinction these earlier cases may have sought to preserve. The proof of the pudding is the long line of cases starting with United States v. Powell, 379 U.S. 48 (1964) cases _____________ ______ -24- that repeatedly have sanctioned the authority of a particular agency, the Internal Revenue Service (IRS), to issue summonses for either personal or corporate records on the minimal showing that the majority today explicitly rejects. See id. at 57-58 ___ ___ (explaining that the IRS need only "show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the [IRS's] possession, and that the administrative steps required by the Code have been followed"). Though Powell itself dealt with a corporate taxpayer, it is ______ transpicuously clear that the Powell standard applies to the ______ production of private financial papers and records of individuals, that is, to the production of records pertaining to economic or fiscal activity (which, for simplicity's sake, I will henceforth call financial records). See, e.g., Ryan v. United ___ ____ ____ ______ States, 379 U.S. 61, 62 (1964) (upholding IRS summons to ______ individual taxpayer "for the reasons given in United States v. _____________ Powell"); United States v. McAnlis, 721 F.2d 334, 336-37 (11th ______ ______________ _______ Cir. 1983), cert. denied, 467 U.S. 1227 (1984); United States v. _____ ______ _____________ Roundtree, 420 F.2d 845, 847-51 (5th Cir. 1969). _________ The Powell standard remains both the law of the land, ______ see, e.g., Tiffany Fine Arts, Inc. v. United States, 469 U.S. ___ ____ _________________________ ______________ 310, 323 (1985), and the law of this circuit, see, e.g., Copp v. ___ ____ ____ United States, 968 F.2d 1435, 1437 (1st Cir. 1992), cert. denied, _____________ _____ ______ 113 S. Ct. 1257 (1993). What is more, Powell is the building ______ block around which, up to now, our modern administrative subpoena -25- jurisprudence has been constructed. See, e.g., United States v. ___ ____ _____________ Comley, 890 F.2d 539, 541 (1st Cir. 1991) (citing Powell and ______ ______ applying Powell principles to administrative subpoena issued by ______ the Nuclear Regulatory Commission); SEC v. Howatt, 525 F.2d 226, ___ ______ 229 (1st Cir. 1975) (same, with respect to subpoena issued by the SEC). There is no valid reason why this standard, undiluted, should not apply here. If Congress can authorize the IRS to issue summonses calling for the production of personal financial records on such a bareboned showing without running afoul of the Fourth Amendment, then it is clear to me that Congress can authorize other agencies to do the same. The cases and the commentators bear witness to this verity. See, e.g., SEC v. ___ ____ ___ Kaplan, 397 F. Supp. 564, 570 (E.D.N.Y. 1975) (enforcing subpoena ______ issued by SEC for personal financial records of an individual); Wayne R. LaFave, Search & Seizure 4.13(e), at 383 (2d ed. 1987) ________________ (acknowledging rule). Believing, as I do, that an individual has no greater (legitimate) expectation of privacy in her financial records than does a business, I see no reason to conduct the kind of balancing that the majority covets in order to test the reasonableness of an administrative subpoena that seeks the production of personal financial records. Oklahoma Press and Morton Salt, read together ______________ ___________ with the Powell-Ryan line of cases, lead inexorably to the ______ ____ conclusion that, to borrow a leaf from Gertrude Stein's book, financial records are financial records are financial records. This conclusion holds true whether the records belong to an -26- individual or to an enterprise, and administrative subpoenas seeking such records are per se reasonable a long as they are lawfully authorized, relevant, sufficiently specific, and procedurally unblemished. Let me be perfectly clear. I do not suggest that the minions of an administrative agency can roam at will, like a herd of zebra on the veldt, through an individual's personal papers or effects. I am open to the idea that there may be a heightened privacy interest in certain non-business records (e.g., personal diaries, letters, medical records, and the like) requiring, in turn, a more finely calibrated balance between public and private interests before a court lawfully can order such records produced in response to a summons. See, e.g., FDIC v. Wentz, 55 F.3d 905, ___ ____ ____ _____ 908 (3d Cir. 1995); see generally LaFave, supra, at 383 ___ _________ _____ (suggesting that, "[i]n the case of private individuals, perhaps the mere relevance standard is sufficient to protect privacy interests in documents related to economic activity, but arguably purely private papers should be protected by requiring the investigatory body to meet a more stringent standard"). Recognizing, however, that "[w]e are not so outraged by the intrusion on privacy that accompanies the seizure of [financial] records as we are by the seizure of a diary," Couch v. United _____ ______ States, 409 U.S. 322, 350 (1973) (Marshall, J., dissenting), I ______ discern no constitutional impediment to the administrative subpoena that the FDIC served on Parks. Since the record shows conclusively that the FDIC issued the subpoena for a legitimate -27- purpose (an investigation into, inter alia, whether Parks may be _____ ____ liable to the FDIC),11 that the inquiry is relevant to that purpose, that the information requested is not already within the agency's ken, and that the necessary procedural bases were touched, the subpoena should be enforced. C C Apart from the fact that the majority's brand-new standard is unmoored both from precedent and from the Fourth Amendment, the standard also fares poorly on policy grounds. I will not dwell on this aspect, except to note that the rule envisioned in the majority opinion is inconsistent with the bases of the modern administrative state. Administrative investigations differ significantly from criminal investigations: government agencies typically investigate in order to enforce compliance with complicated structures of economic regulation. The ability to obtain information from regulated parties and those persons in privity with them typically is vital to the success of the regulatory scheme. See United States v. Morton Salt Co., 338 U.S. 632, 642 ___ _____________ _______________ (1950); Oklahoma Press, 327 U.S. at 216; Stephen G. Breyer & ______________ Richard B. Stewart, Administrative Law & Regulatory Policy 975 ________________________________________ (2d ed. 1985). And it is a fact of life that agencies charged  ____________________ 11 In this instance, it is immaterial that the FDIC's order of investigation listed other objects as well. See ante at 3. The ___ ____ requirement that an administrative subpoena must be issued for a proper purpose is satisfied in the case of a multi-purpose subpoena as long as any one of the underlying purposes is proper. See Tiffany Fine Arts, 469 U.S. at 324; FTC v. Carter, 636 F.2d ___ _________________ ___ ______ 781, 789 (D.C. Cir. 1980). -28- with regulating economic activity often cannot articulate probable cause or even reasonable suspicion that a violation has transpired without first examining documents reflecting a party's economic activity. See Kenneth C. Davis & Richard J. Pierce, ___ Jr., Administrative Law Treatise 4.1, at 138 (3d ed. 1994). ____________________________ This incipient problem the need to hitch the horse in front of the cart is frequently exacerbated because the subpoena power has great significance for most administrative agencies in the conduct of important public business. Partially for that reason and partially out of a concern for separation of powers it is trite but true that the Judicial Branch must respect the Executive Branch's prerogatives to enforce the laws, see, e.g., Howatt, 521 F.2d at 229 the ___ ____ ______ courts historically have had a very circumscribed role in the oversight of administrative subpoenas. See, e.g., Morton Salt, ___ ____ ___________ 338 U.S. at 642-43; EEOC v. Bay Shipbuilding Corp., 668 F.2d 304, ____ ______________________ 308-09 (7th Cir. 1981); Goodyear Tire & Rubber Co. v. NLRB, 122 ___________________________ ____ F.2d 450, 451 (6th Cir. 1941). To this end, judicial proceedings regarding the enforcement of such subpoenas are intended to be relatively informal and summary in nature. See Donaldson v. ___ _________ United States, 400 U.S. 517, 529 (1971); Bay Shipbuilding, 668 _____________ _________________ F.2d at 309. The court's sole function is to ensure that a subpoena is issued for a proper purpose and in compliance with the law. See Comley, 890 F.2d at 541; FTC v. Texaco, Inc., 555 ___ ______ ___ ____________ F.2d 862, 872 (D.C. Cir.) (en banc), cert. denied, 431 U.S. 974 _____ ______ (1977). By handing the targets of agency investigations a potent -29- new weapon, cf. SEC v. Jerry T. O'Brien, Inc., 467 U.S. 735, 750 ___ ___ ______________________ (1984) (rejecting a notice requirement for third-party SEC subpoenas in part because it "would substantially increase the ability of persons who have something to hide to impede legitimate investigations by the Commission"), the majority facilitates the insertion of monkey wrenches into the administrative machinery, and creates the potential not only for delaying agency probes (thereby further eroding agency effectiveness), but also for increasing the extent of judicial intrusions into the agency sphere. It is clear that Congress feared these very dangers. Having written the FDIC's organic statute broadly, requiring the agency to assess the conduct of officials employed by or affiliated with federally insured banks from a variety of different perspectives, most of which relate to the governmental interest in minimizing the public's exposure to financial loss, Congress vested generous, easily enforceable subpoena power in the FDIC so that the agency could pursue its public mission. See ___ H.R. Rep. No. 681(I), 101st Cong., 2d Sess. 170, 186 (1990), reprinted in 1990 U.S.C.C.A.N. 6472, 6576, 6592. Without the _________ __ ability to use this power as Congress intended including the ability to subpoena individuals' personal financial records based on relevance and nothing more the FDIC likely will be hamstrung in its efforts to perform the full range of its statutory responsibilities. Thus, the majority's suggested standard (which, as I have explained, is mandated neither by precedent nor -30- by constitutional doctrine) unaccountably undermines the ability of the FDIC and every other administrative agency to do Congress's bidding, and thereby frustrates the congressional will for no good reason.12 See Federal Maritime Comm'n v. Port of ___ ________________________ ________ Seattle, 521 F.2d 431, 433 (9th Cir. 1975) (explaining that the _______ "very backbone of an administrative agency's effectiveness in carrying out the congressionally mandated duties of industry regulation is the rapid exercise of the power to investigate"). D D Because I am convinced that my colleagues are needlessly infringing upon the lawful powers of administrative agencies, and because I fear the mischief that this well- intentioned effort to resurrect a moribund view of the Fourth Amendment may produce, I respectfully dissent.  ____________________ 12 This does not mean, of course, that I endorse, as a matter of policy, either the FDIC's penchant for riding roughshod or its aggressive use of administrative subpoenas. But the rule of law requires judges to subrogate such personal reservations to precedent and reason. After all, constitutional adjudication "must be an overriding judgment founded on something much deeper and more justifiable than personal preference." Sweezy v. New ______ ___ Hampshire, 354 U.S. 234, 267 (1957) (Frankfurter, J., _________ concurring). -31-